

EOD
09/29/2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MACIEK PAWEL NAZARKO | § | Case No. 05-40372 |
| and CATHY LYNN NAZARKO, | § | (Chapter 7) |
|    Debtor. | § | |
| | § | |
| | § | |
| THE OAKS BANK AND TRUST CO., | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| vs. | § | Adv. No. 05-4024 |
| | § | |
| MACIEK PAWEL NAZARKO, | § | |
| | § | |
|    Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Oaks Bank and Trust Company (the "Plaintiff") initiated this action against Mark Pawel Nazarko (the "Defendant") by filing a "Complaint to Determine Dischargeability of Debt" (the "Complaint") on February 23, 2005. In the Complaint, the Plaintiff sought a determination that the obligations of the Defendant to the Plaintiff are not dischargeable in bankruptcy pursuant to 11 U.S.C.§§ 523(a)(2)(A), (a)(4) and (a)(6). Based upon the Court's consideration of the pleadings, the evidence admitted at the trial on January 5, 2005, including all stipulations of the parties, and the argument of counsel, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as incorporated into adversary proceedings in bankruptcy cases by Federal Rule of Bankruptcy Procedure 7052:

### I. FINDINGS OF FACT

1.    The Defendant was, at all relevant times, a licensed automobile dealer.

2. The Defendant financed approximately nine cars through the Plaintiff over a period of several years. The loans provided by the Plaintiff were short-term loans (at least initially), since the Defendant was to repay the Plaintiff upon selling the vehicles.

3. The Defendant was responsible for recording the Plaintiff's liens on the titles for each of the vehicles securing each of the Plaintiff's loans to the Defendant.

4. Except for two loans outstanding at the time of bankruptcy, the Defendant repaid the loans made to him by the Plaintiff.

5. Two witnesses testified at the trial of the Plaintiff's Complaint – the Defendant and Dennis Van Fossen, the president of the Plaintiff.

## A. The Mercedes Loan

6. In April 2001, the Plaintiff financed the Defendant's purchase of a 2001 Mercedes Benz S340 (the "Mercedes"). The term of the loan was for sixty days, since the Defendant intended to resell the vehicle.

7. In particular, on or about April 16, 2001, the Defendant, as borrower, and the Plaintiff, as lender, executed a Promissory Note and Security Agreement in the amount of $52,200.00 (the "Mercedes Loan"). The Defendant's obligations under the Promissory Note and Security Agreement were scheduled to mature on June 15, 2001, and were secured by the Mercedes.

8. On or about April 16, 2001, the Defendant applied for a title to be issued in his name. The Defendant provided the Plaintiff with a copy of a Texas Department of Transportation Title Application Receipt, commonly referred to as a "white slip."

9. The "white slip" did not contain any information about the Plaintiff's lien. Neither the Defendant nor the Plaintiff noticed that the "white slip" did not reflect the

Plaintiff's lien. Several weeks later, the Defendant obtained a title to the Mercedes that did not reflect the Plaintiff's lien.

10. The Defendant was unable to sell the Mercedes prior to the maturity date of the Mercedes Loan.

11. Accordingly, on May 25, 2001, the Defendant renewed and extended his obligations under the Promissory Note and Security Agreement by executing a Simple Interest Note and Security Agreement payable to the Plaintiff. The Defendant's obligations under the Simple Interest Note and Security Agreement were scheduled to mature on May 25, 2004. Pursuant to the terms of the Simple Interest Note and Security Agreement, the Defendant was to make monthly payments to the Plaintiff of $1,667.22 beginning on June 25, 2001.

12. At some point during May 2001, the Defendant realized that the title to the Mercedes did not reflect the Plaintiff's lien. The Defendant did not bring the defect to the attention of the Plaintiff or attempt to record the Plaintiff's lien on the title to the vehicle. Rather, he decided to sell the Mercedes and use the proceeds to finance additional vehicle purchases or trades.

13. The Defendant's testimony that he believed the Plaintiff had extended him an unsecured loan to purchase the Mercedes was not credible.

14. The Plaintiff did not receive any payments from the Defendant after September 25, 2002.

15. Following the Defendant's default, Mr. Van Fossen began seeking to collect the loan. Mr. Van Fossen discovered that the Plaintiff's lien had not been recorded on the title to the Mercedes. He also discovered that the Mercedes had been

transferred to another dealer (called Nexus Motor Cars) at some time prior to September 2001. Nexus Motor Cars sold the Mercedes in September 2001 for $71,000, and another bank had recorded a lien on the Mercedes.

16. Mr. Van Fossen called the Defendant and scheduled a meeting with him. He met with the Defendant in his office on October 30, 2002. Mr. Van Fossen informed the Defendant that he had discovered that the Plaintiff's lien was not recorded on the title for the Mercedes. The Defendant replied that he became aware of this fact within a few weeks of receiving the title. The Defendant explained to Mr. Van Fossen that, rather than correcting the title, he had decided to sell the Mercedes and use the proceeds to make more vehicle purchases and trades.

17. On November 19, 2002, the Plaintiff charged off $32,464.23 for the Mercedes Loan.

18. At trial, the Defendant testified that he had sold the Mercedes to a personal acquaintance pursuant to an unwritten agreement. The Defendant testified that he kept the title in his possession for a while, because it was a "good thing to have." According to the Defendant, he eventually gave the title to his personal acquaintance so that his acquaintance could obtain insurance on the vehicle.

19. The Defendant testified that his acquaintance was to send him the amount owed to the Plaintiff each month, which he would then send to the Plaintiff. The Defendant testified that, after making approximately $25,000 in payments, his acquaintance stopped sending him any money.

20. The Defendant's testimony regarding the sale of the Mercedes to an acquaintance contradicted his statements to Mr. Van Fossen on October 30, 2002.

## B. The Lexus Loan

21. On January 11, 2002, the Defendant, as debtor, and the Plaintiff, as secured party, executed a Commercial Security Agreement wherein the Defendant granted the Plaintiff an interest in a 1999 Lexus 300 (the "Lexus") to secure any advances made by the Plaintiff pursuant to the agreement.

22. On April 11, 2002, the Defendant executed a Universal Note in the amount of $19,074.78. Pursuant to the terms of the Universal Note, the Defendant was to make payments on demand or, if no demand was made, was to pay the Plaintiff $19,657.32 on July 11, 2002. The Defendant's obligations under the Universal Note were secured by a Commercial Security Agreement dated April 11, 2002, in which the Defendant granted the Plaintiff a secured interest in the Lexus.

23. On July 11, 2002, the Defendant executed a Universal Note in the amount of $16,606.60 payable to the Plaintiff. Pursuant to the terms of the Universal Note, the Defendant was to make payments on demand or, if no demand was made, was to pay the Plaintiff $17,119.36 on October 11, 2002.

24. In early September 2002, the Defendant told Mr. Van Fossen that he planned to sell the Lexus at an auto auction in Oklahoma. The Defendant requested that Mr. Van Fossen release the title to him under a "trust receipt."[1] The Plaintiff routinely granted such requests in the ordinary course of its business with automobile dealers. Mr. Van Fossen testified that the "trust receipt" required the Defendant to either return the title to the Plaintiff or transfer proceeds from the sale of the Lexus to the Plaintiff within

---

[1] A "trust receipt" is defined as "[a] pre-UCC security device -- now governed by Article 9 of the Code -- consisting of a receipt stating that the wholesale buyer has possession of the goods for the benefit of the financier. • Today there must usu. be a security agreement coupled with a filed financing statement." BLACK'S LAW DICTIONARY (8th ed. 2004)

5

ten days. (Neither party introduced a written "trust receipt" into evidence.)

25. Approximately two weeks elapsed. Mr. Van Fossen began trying to locate the Lexus. The Defendant eventually told Mr. Van Fossen that he had entrusted the car to an employee, who had disappeared with the vehicle.

26. At trial, the Defendant testified that he entrusted the Lexus and the title to the Lexus to an employee to take to the auction in Oklahoma. The Lexus never arrived at the auction. The Defendant testified that his employee, who had worked for him for approximately one year, never returned.

27. The Plaintiff charged off $16,606.60 for the loan relating to the Lexus.

28. In January 2003, the Plaintiff completed a Complaint Form, which the Plaintiff submitted to the Dallas Police Department. The Plaintiff complained that the Defendant had taken its property (*i.e.,* the Lexus and the Mercedes) on approximately April 16, 2001 and September 1, 2002. The Plaintiff valued its missing collateral at $65,000.

### C. The Defendant's Bankruptcy Petition

29. On January 24, 2005, the Defendant filed a petition for relief under Chapter 7 of the Bankruptcy Code.

30. Prior to the petition date, the Plaintiff filed a civil suit against the Defendant. The Plaintiff's civil suit was automatically stayed by the Defendant's bankruptcy petition.

31. In the present Complaint, the Plaintiff seeks to have the Defendant's obligations to it in the total amount of $49,557.69 declared nondischargeable in bankruptcy.

## II. CONCLUSIONS OF LAW

1. This Court has jurisdiction to consider the Complaint pursuant to 28 U.S.C. §§ 1334 and 157(a). The Court has the authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (I), and (O).

2. In an action to determine the dischargeability of a debt, the creditor has the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997). Thus, without satisfactory proof of each element of the causes of action asserted by the Plaintiff, judgment must be entered for the Defendant.

### A. The Mercedes Loan: 11 U.S.C. §523(a)(6)

3. Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity.

4. The U.S. Supreme Court recently examined whether the scope of §523(a)(6) encompasses all intentional acts that cause injury, or only acts done with an actual intent to cause injury. *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). In *Geiger*, the U.S. Supreme Court stated that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury."

5. In *In re Miller*, 156 F.3d 598, 603 (5th Cir. 1998), the Fifth Circuit articulated a methodology by which to distinguish between acts intended to *cause* injury as opposed to those merely *leading* to injury. The Fifth Circuit determined that a "willful injury" is established under §523(a)(6) when there exists either: (1) an objective substantial certainty of harm arising from a deliberate or intentional action or (2) a subjective motive to cause harm by a party taking a deliberate or intentional action. *Id*. This standard for determining the existence of a "willful" injury subsumes the former standard for determining "malicious" conduct under §523(a)(6) -- *i.e.,* without just cause or excuse -- and there is no need to conduct a separate analysis as to maliciousness. *Id*. at 604-06; *In re Keaty*, 397 F.3d 264, 270 (5th Cir. 2005).

6. Here, in connection with the Mercedes, the Plaintiff that argued that the Defendant willfully converted its property by selling the Mercedes without its consent. *See In re Grisham*, 245 B.R. 65 (Bankr. N.D. Tex. 2000).

7. The Plaintiff established, by a preponderance of the evidence, that the Defendant sold the Mercedes without its consent. The Defendant knew he was selling the Mercedes without the Plaintiff's consent. The Defendant did not use the proceeds of the sale to repay the Plaintiff. Rather, the Defendant used the sale proceeds to finance other business ventures.

8. Thus, the Plaintiff has established that the Defendant converted its collateral for his own use. The conversion injured the Plaintiff – the obligation secured by the Mercedes remains unpaid. Further, there was an objective substantial certainty of harm to the Plaintiff arising from the Defendant's deliberate and intentional use of the proceeds of the sale of the Mercedes to finance other automobile trades and sales.

9. For the foregoing reasons, the Court finds that the Defendant willfully and maliciously injured the Plaintiff in connection with the Mercedes Loan, and that the amount owing under the Mercedes Loan ($32,464.23) is nondischargeable pursuant to §523(a)(6) of the Bankruptcy Code.

### B. <u>The Lexus Loan: 11 U.S.C. §523(a)(2)(A)</u>

10. Section 523(a)(2)(A) provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
        (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11. Although other circuits have applied a uniform standard to all §523(a)(2)(A) actions, the Fifth Circuit has distinguished the elements of "actual fraud" on the one hand and "false pretenses and false representations" on the other. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995).

12. To have a debt excepted from discharge pursuant to the "actual fraud" provision in §523(a)(2)(A), an objecting creditor must prove that: (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained losses as a proximate result of the representations. *Id.* at 1293.

13. "'Justifiable reliance' represents a lesser burden on fraud plaintiffs than what 'reasonable reliance' might imply." *Beijing Metals & Minerals Import/Export Corp. v. American Business Ctr., Inc.,* 993 F.2d 1178, 1186 (5th Cir.1993) (internal

9

citations and quotations omitted).

14. To determine "justifiable reliance," courts inquire whether, "given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud -- it is extremely unlikely that there is actual reliance on the plaintiff's part." *Id.* However, reliance by a party is not justifiable when a representation is "shown by facts within [the plaintiff's] observation to be so patently and obviously false that [the plaintiff] must have closed his eyes to avoid discovery of the truth." *Stanley v. Wal-Mart Stores, Inc.*, 839 F.Supp. 430, 434 (N.D. Tex. 1993) (quoting *General Motors Corp. v. Courtesy Pontiac, Inc.*, 538 S.W.2d 3, 6 (Tex.Civ.App.--Tyler 1976, no writ)).

15. In this case, the Plaintiff complained that the Defendant fraudulently misrepresented his intention to sell the Lexus at auction in order to obtain a release of the Plaintiff's lien. The Plaintiff also complained that the Defendant fraudulently misrepresented that he intended to keep the Lexus in his personal possession until it was sold at auction.

16. However, the Plaintiff failed to establish, by a preponderance of the evidence, that the Defendant misrepresented his intention to sell the Lexus at an auction in Oklahoma. The fact that the Lexus never reached the auction does not, standing alone, establish any misrepresentation by the Defendant.

17. Likewise, the Plaintiff failed to establish, by a preponderance of the evidence, that the Defendant misrepresented that he would take the Lexus to the auction himself. The "trust receipt" was not introduced into evidence. Further, there was no evidence that the Plaintiff believed the Defendant's business to be a sole proprietorship or

that the Plaintiff, as a matter of course, expected automobile dealers such as the Defendant to keep vehicles released pursuant to a "trust receipt" in their personal possession. The only evidence on his point was the Defendant's, who testified that he had several employees and that it was customary for his employees to take cars to auctions for sale so that he could continue to run his business.

18. For the foregoing reasons, the Court finds that the Plaintiff has failed to sustain its burden of proof to establish a claim for fraudulent misrepresentation under §523(a)(2)(A) of the Bankruptcy Code.

### C. Embezzlement or Larceny: 11 U.S.C. 523(a)(4)

19. Embezzlement is defined for the purposes of §523(a)(4) as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come."[2]

20. Thus, "[a] creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Brady v. McAllister (In re Brady),* 101 F.3d 1165, 1173 (6th Cir.1996); *In re Sokol,* 170 B.R. 556, 560 (Bankr. S.D.N.Y. 1994); *cf. Coburn Co. v. Nicholas,* 956 F.2d 110, 111 (5th Cir. 1992) (requiring an intent to defraud for a determination of whether there has been a breach of a fiduciary relationship under §523(a)(4)).

21. Here, the Plaintiff's counsel did not argue for a nondischargeable judgment based on §523(a)(4) in his closing arguments.

---

[2] "[Embezzlement] differs from larceny in that the original taking of the property was lawful, or with consent of the owner, while in larceny the felonious intent existed at the time of the taking. Larceny is defined as the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's own use without the consent of the owner." *McDaniel v. Border (In re McDaniel)*, 181 B.R. 883, 887 (Bankr. S.D. Tex. 1994).

22. Neither the Plaintiff's Complaint nor the Joint Pretrial Order, as amended, specifically state which facts are alleged to support the Plaintiff's claim under §523(a)(4).

23. The Plaintiff's claim under §523(a)(4) appears to be an embezzlement claim relating to the disappearance and alleged theft of the Lexus following the Plaintiff's release of clear title to the Lexus pursuant to a "trust receipt."

24. However, a threshold matter, the Plaintiff has failed to establish that it entrusted its property to the Defendant. "Simply stated, a lender who advances a loan for the purposes of its debtor's acquiring an interest in a motor vehicle and as part of that transaction acquires a security interest in the vehicle itself, does not have any ownership interest in the vehicle which will sustain either an action for larceny or an action for embezzlement." *In re Whiters*, 337 B.R. 326, 333 (Bankr. N.D. Ind. 2006) (rejecting §523(a)(4) claim as a matter of law, since debtor could not embezzle or steal vehicle that bank did not own, but in which it had only a security interest). *Accord Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333 (a debtor who has given his creditor a "trust receipt" to secure the loan is not a fiduciary for purposes of §523(a)(4)).

25. For the foregoing reasons, the Court concludes that the Plaintiff has failed to sustain its burden of proof under §523(a)(4).

### III. CONCLUSION

The Court finds and concludes that the Defendant's obligation to the Plaintiff in connection with the Mercedes Loan, in the amount of $32,464.23, is nondischargeable pursuant to 11 U.S.C. §523(a)(6). The Plaintiff, however, has failed to sustain its burden of proof with respect to the remainder of the claims in its Complaint.

The Court will enter a separate judgment consistent with these findings and

conclusions. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings as necessary or as requested by any party.

Signed on 9/29/2006

*Brenda T. Rhoades*  MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE